**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

LISA THOMPSON,                    :

              **Plaintiff,**       :      **Case No. 2:07-CV-00110**

       **vs.**                 :      **Magistrate Judge King**

**OHIOHEALTH CORPORATION,**      :

           **Defendant.**       :

## OPINION AND ORDER

This is an employment action in which plaintiff alleges that her employment by defendant was terminated on account of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII") and Ohio Revised Code Chapter 4112 ("O.R.C. § 4112").  Plaintiff also complains that she was wrongfully terminated and was never told the reason for her discharge, which this Court construes as a claim based on Ohio's public policy.  Plaintiff is proceeding without the assistance of counsel.  This matter is before the Court on *Defendant OhioHealth Corporation's Motion for Summary Judgment*, Doc. No. 43 ("*Motion for Summary Judgment*").  For the reasons that follow, OhioHealth's *Motion for Summary Judgment* is **GRANTED**.

## I.  BACKGROUND

### A.  Interviews and Job Offer

Plaintiff, an African-American female, first interviewed with OhioHealth on August 22, 2005. *Deposition of Lisa Thompson,* Doc. No. 42, at 158 ("*Thompson Depo.*"). Prior to the interview, recruiters forwarded to plaintiff job descriptions of at least two positions with

OhioHealth: Senior Financial Analyst and Senior Systems Analyst. *Id.* at 159-61. *See also Exhibits 2 and 3,* attached to *Motion for Summary Judgment.* The Senior Systems Analyst position was more technical than was the Senior Financial Analyst position. *Thompson Dep.,* at 170. Some of the duties listed for the Senior Financial Analyst position were: "review regular financial reports (bi-weekly or monthly) for the related service line departments; develop relationship with service line management and work on special projects; educate departments on and coordinate operational and capital budgeting process; and share with and educate other financial analysts." *Exhibit 2.*

Linn Weimer ("Ms. Weimer"), Vice President of Revenue Cycle at that time, conducted plaintiff's interview. *Thompson Depo.* at 14, 162-63. Plaintiff told Ms. Weimer that plaintiff was qualified for and could perform the duties of the Senior Financial Analyst position. *Id.* at 170-75. On September 14, 2005, plaintiff was again interviewed at OhioHealth where she met with several people. *Thompson Depo.* at 176-78. During these interviews, the expectations for the Senior Systems Analyst position and Senior Financial Analyst position were discussed. *Id.* at 178-85. While plaintiff told Ms. Weimer that she felt comfortable with the duties of the Senior Financial Analyst position, she did express concern about some of the duties of this position. *Id.* at 183-85. Ms. Weimer responded that these concerns would be addressed during training. *Id.* at 184-85.

On September 29, 2005, plaintiff was offered the position of Senior Financial Analyst. *Id.* at 186. OhioHealth kept this offer open for two months while plaintiff weighed her options and settled her personal affairs. *Id.* at 186-89. On November 22, 2005, plaintiff notified Ms. Weimer that she would accept the position of Senior Financial Analyst. *Id.* at 190-92.

## 2.     Plaintiff's Employment

Plaintiff began her employment with OhioHealth on December 12, 2005.  *Id*. at 194; *Complaint*, at 5.  By this time, Ms. Weimer had left OhioHealth and Nancy Rhodes ("Ms. Rhodes") was the acting Vice President of Revenue Cycle.  *Thompson Depo*. at 192.[1]  Plaintiff met with Ms. Rhodes on December 13, 2005.  *Id*. at 198-203.  Ms. Rhodes assigned plaintiff to work with another employee, Melissa Danamehr ("Ms. Danamehr"), who was to help plaintiff become familiar with the month end reports.  *Id*. at 206-08.[2]  Ms. Rhodes also assigned another employee, Seetha Jayaraman, to assist plaintiff in becoming familiar with the contract management system.  *Id*. at 215-16.  Plaintiff also received computer training relating to the budgeting system  from Patty Bookmeyer, an employee in the finance department.  *Id*. at 219-22.

## C.     Plaintiff's Meetings with her Supervisor and Human Resources

On February 1, 2006, Jane Berkebile ("Ms. Berkebile") became the permanent Vice President of Revenue Cycle.  *Affidavit of Jane Berkebile*, attached as Exhibit 4 to *Motion for Summary Judgment*, at ¶ 2 ("*Berkebile Affidavit*").  Ms. Berkebile believed "that Plaintiff was struggling to fulfill the job duties of the Senior Financial Analyst position." *Id*. at ¶ 2.  According to Ms. Berkebile, plaintiff was not interested in receiving the training that was being provided to her; she surfed the internet during the workday.  *Id.*

Because of these perceived problems, plaintiff and Ms. Berkebile met on February 8, 2006.  *Thompson Depo*. at 260.  Ms. Berkebile explained to plaintiff the various duties for the

---

[1]This was an interim position for Ms. Rhodes while OhioHealth found a permanent replacement for Ms. Weimer. *Thompson Depo*. at 16.

[2]The Senior Financial Analyst position required plaintiff to complete month end reports for related service line departments. *Exhibit 2,* to *Motion for Summary Judgment*.

Senior Financial Analyst position. *Id*.; *Berkebile Affidavit* at ¶ 2. Ms. Berkebile also asked plaintiff if she wanted to remain in this position and, if not, whether plaintiff was interested in moving into other positions within OhioHealth. *Id*. at ¶ 2. Plaintiff indicated that she wanted to remain at OhioHealth. *Thompson Depo*. at 263-64. A followup meeting was scheduled to discuss plaintiff's future plans. *Id*. at 263-65.

On February 24, 2006, plaintiff met with Susan Talebi ("Ms. Talebi") of Human Resources to discuss plaintiff's employment with OhioHealth. *Thompson Depo*. at 266. They also discussed finding another position for plaintiff within OhioHealth and plaintiff mentioned that she was interested in doing so. *Id*. at 269-70. Ms. Talebi told plaintiff to notify her if plaintiff found a position within OhioHealth that interested her. Ms. Talebi assured plaintiff that the appropriate person would be notified of plaintiff's interest. *Id*. Additionally, plaintiff was notified by Ms. Talebi that she had two weeks to find a new position. *Id*. at 281.

### D. Plaintiff's Job Interviews and Job Offer

Subsequent to her meeting with Ms. Talebi, plaintiff applied for four positions within OhioHealth and interviewed for two of those positions. *Id*. at 273-74. On March 7, 2006, Mary Quesenberry ("Ms. Quesenberry") interviewed plaintiff for a Senior Data Analyst position. *Thompson Depo*. at 274-75. On March 15, 2006, Lawrence McNeil interviewed plaintiff for a Systems Analyst position. *Id*. at 275-76. On March 15, 2006, Ms. Quesenberry offered plaintiff the position of Senior Data Analyst. *Id*. This offer remained open for approximately two weeks. *Id*. at 276-78.

Plaintiff also applied for several positions outside OhioHealth. *Thompson Depo*. at 278-80. Plaintiff eventually notified Ms. Quensenberry that she would not accept the position of

4

Senior Data Analyst position. *Id*. at 277-79. On April 3, 2006, Ms. Talebi and Ms. Berkebile decided to terminate plaintiff's employment with OhioHealth. *Id*. at 284-87. On the same day, plaintiff received an offer of employment from Perot Systems. *Id*. The termination of plaintiff's employment with OhioHealth became effective on April 5, 2006. *Id.,* at 281.

## II.    STANDARD OF REVIEW

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . ." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In this case, plaintiff is proceeding without the assistance of counsel. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 746 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id.* (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citing *Hall*, 935 F.2d at 1110).

## III.    ANALYSIS

### A.    Claims under Title VII and O.R.C. §4112.02

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2 (a)(1).  The Ohio Revised Code similarly prohibits discrimination on the basis of race.  O.R.C. § 4112.02 (A).  Federal case law interpreting Title VII is generally applicable to cases involving alleged violations of O.R.C. § 4112.  *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 69 Ohio St. 3d 89, 95 (1994).  Therefore, both the Title VII claim and the O.R.C. § 4112 claim will be analyzed together.

To establish wrongful discrimination in violation of Title VII, a plaintiff must demonstrate an inference of discriminatory treatment by presenting either direct evidence or indirect evidence of discrimination.  *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997).  "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."  *Id*. at 348-49.

### 1.    Direct Evidence of Discrimination

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  "Direct evidence proves the existence of a fact without any inferences or presumptions."  *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Johnson v. Kroger Co.*, 319 F.3d 858, 865

(6th Cir. 2003).

Plaintiff alleges that both Ms. Rhodes and Ms. Danamehr made discriminatory statements towards her. *Reply to Defendant Ohio Health [sic] Corporation's Motion for Summary Judgement [sic] and Memorandum*, Doc. No. 44, at 3 ("*Plaintiff's Response*").

### a.    Nancy Rhodes

Plaintiff alleges that Ms. Rhodes, her interim supervisor, made a racially discriminatory comment towards her on December 5, 2005.

> Q:    [J]ust before we wrap up with our discussion about Ms. Rhodes, did she ever make – you mentioned earlier that she never made any outward comments to you about your race, correct?
> A.    Early on, she made some offhanded remarks about minorities from New Orleans.
>
> Q.    When was this?
> A.    This was in December of '05.
>
> Q.    Okay.  What was the comment?
> A.    She made the comment, those poor people.
>
> Q:    Those poor people?
> A.    Poor people, they should never want to go back there.  She questioned if I would ever go back.
>
> Q.    And you think that was –
> A.    Racially based, yes.
>
> Q.    Okay.  Anything else?
> A.    Not that I can recall at this moment.

*Thompson Depo.* at 68-69.  OhioHealth contends that the allegation does not constitute direct evidence of discrimination.  Defendant OhioHealth specifically argues that Ms. Rhodes could not have influenced the employment decision because she was no longer employed by OhioHealth at the time of plaintiff's termination and it was Ms. Berkebile's sole decision to

terminate plaintiff.

In any event, defendant argues, the comment does not reflect a racial bias or discriminatory animus. *Motion for Summary Judgment*, at 9.

The first inquiry into determining the relevancy of any discriminatory remark is identifying the speaker who made the alleged remark. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998). "[C]omments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F. 3d 269, 273 (6th Cir. 2003). *See also Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002).

A reasonable jury could not conclude that Ms. Rhodes was in a position to influence the employment decision to terminate plaintiff. Ms. Rhodes' employment with OhioHealth ended in February, 2006, approximately two months before plaintiff's employment was terminated effective April 5, 2006. By that time, of course, Ms. Rhodes was no longer plaintiff's supervisor, but had been replaced by Ms. Berkebile on February 1, 2006. *Berkebile Affidavit*, at ¶ 2. It was Ms. Berkebile's sole decision to terminate plaintiff and that decision was based on her own personal observations of plaintiff. *Id*. at ¶ 5. It follows, then, that Ms. Rhodes' alleged statement cannot constitute direct evidence of discrimination because she was not involved in the decision-making process regarding the termination of plaintiff's employment.

Once the speaker's role has been ascertained, the substance of the discriminatory remark is examined to determine "[its] relevancy to a plaintiff's claim than an impermissible factor

motivated the adverse employment action taken against him or her." *Ercegovich*, 154 F.3d at 354. "Isolated and ambiguous comments 'are too abstract' . . . to support a finding of [race] discrimination." *Id.* at 356. Plaintiff complains that Ms. Rhodes manifested a racially discriminatory animus when she referred to the residents of New Orleans as "those poor people." *Thompson Depo.* at 68-69. There is no evidence that reference to "poor people" included a reference to racial minorities. Even if made, Ms. Rhodes' statement is therefore too ambiguous to support an inference of race discrimination. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993) (finding that a supervisor's remark that 'plaintiff's fifty-fifth birthday month was a cause of concern' was too ambiguous to support an inference of age discrimination).

### b. Melissa Danamehr

Plaintiff also alleges that Ms. Danamehr made racial comments that reflected a discriminatory animus. *Thompson Depo.* at 69-74. OhioHealth argues that this allegation is unsuccessful because Ms. Danamehr did not supervise plaintiff and was not a decision-maker in connection with plaintiff's employment. *Motion for Summary Judgment*, at 10. Statements made by nondecisionmakers do not qualify as direct evidence of a discriminatory animus. *Smith v. Legget Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). However, "remarks by those who did not independently have authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, [are] relevant." *Ercegovich*, 154 F.3d at 354-55. *See also Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995) (affirming that remarks by the plaintiff's immediate supervisor demonstrated animus even

though he did not independently have authority to fire plaintiff because he consulted on personnel decisions with the manager who had such ultimate authority).

Plaintiff admits that Ms. Danamehr was neither a decisionmaker nor a supervisor. *Thompson Depo*. at 72-73. Additionally, plaintiff has not demonstrated that Ms. Danamehr had any input in the decision to terminate plaintiff's employment effective April 5, 2006. That decision was made by Ms. Berkebile and was based on her own personal observations of plaintiff. *Berkebile Affidavit*, at ¶ 5.

Accordingly, this Court concludes that plaintiff has not presented direct evidence of race discrimination. Therefore, to prevail on her claims, plaintiff must make a showing of race discrimination using indirect evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 792-93 (1973).

### 2. Indirect Evidence of Discrimination

#### a. *Prima facie* case

The plaintiff bears the initial burden of establishing a *prima facie* case. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of disparate treatment on account of race, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) that similarly situated non-protected employees were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant,* 61 F.3d 1241, 1246 (6th Cir. 1995).

It is undisputed that plaintiff has established the first two prongs of her *prima facie* case. Plaintiff is an African-American who was terminated from employment by OhioHealth on April

5, 2006.  *Thompson Depo*. at 281; *Complaint*, at 5.  OhioHealth argues that plaintiff has not established a *prima facie* case because she has failed to demonstrate that she was qualified for the job and that similarly situated non-protected employees were treated more favorably.  *Motion for Summary Judgment,* at 11.

### (i)  Whether plaintiff was qualified for the position

OhioHealth contends that plaintiff has admitted that she was not qualified for the position of Senior Financial Analyst.  *Motion for Summary Judgment,* at 11.  Plaintiff disputes that contention, *Plaintiff's Response,* at 1, but alleges that this was not the position she was hired to perform.  *Id.*

The evidence establishes that OhioHealth offered the Senior Financial Analyst position to plaintiff.  *Thompson Depo*. at 186.  Plaintiff received the job description for this position before she interviewed with OhioHealth.  *Id*. at 158-61.  Subsequent to the interviews, plaintiff told Ms. Weimer that she was comfortable with the job duties of the Senior Financial Analyst position. *Id*. at 184-85.  On September 29, 2005, plaintiff was offered the position of Senior Financial Analyst.  *Id*. at 186.

Moreover, plaintiff admitted in her deposition that the Senior Financial Analyst position was not suitable for her.  *Thompson Depo*. at 272.

> Q.     Okay.  .  .  .[D]id you feel like the senior financial
>         analyst position wasn't suitable?
> A.     With Jane's description of what she needed and
>         wanted, at that point, I did not feel like it was suitable
>         for me.
> Q.     Why?
> A.     Because she wanted someone who could truly hit the
>         ground running.
> Q.     And, like you said, there would have been a learning
>         curve?

A.     A learning curve. And she indicated to me verbally
           that she did not have time for a learning curve.
*Id.*

Finally, it was apparent to Ms. Berkebile "that Plaintiff was struggling to fulfill the job duties of the Senior Financial Analyst position." *Berkebile Affidavit*, at ¶ 2.  One of the duties of this position was to "review regular (bi-weekly or monthly) financial reports for the related service line departments" and to "share and educate other financial analysts." *Exhibit 2*, to *Motion for Summary Judgment*.  Plaintiff admitted to Ms. Berkebile that she understood nothing discussed at various departmental meetings attended by her as the Revenue Cycle department representative and that she could therefore not participate in those meetings.  *Berkebile Affidavit*, at ¶ 3.

Accordingly, based on plaintiff's own admissions and on the testimony of plaintiff's supervisor, Ms. Berkebile, plaintiff has failed to demonstrate that she was qualified for the position of Senior Financial Analyst.

### (ii)     Similarly situated employees

Plaintiff alleges that Diane Muller ("Ms. Muller"), Ms. Danamehr, Debbie Funk ("Ms. Funk"), and William Hatfield ("Mr. Hatfield") were similarly situated but were treated more favorably because plaintiff's job duties were reassigned to them even though they were allegedly "less qualified." *Complaint* at 5; *Thompson Depo*. at 25-26, 41-42.  Defendant contends that plaintiff is not similarly situated to Ms. Muller, Ms. Danamehr, Mr. Funk, or Mr. Hatfield because of differences in seniority, job duties, and positions. *Motion for Summary Judgment*, at 12-16.

To satisfy the similarly situated requirement, comparable non-protected employees "must

have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). However, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Ercegovich*, 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994)); *Jackson v. Fedex Corporate Servs.*, 518 F.3d 388, 394 (6th Cir. 2008) (holding it was not proper for the district judge to define the relevant factors based solely upon narrow job functions and employer's stated requirements for a specific project).

"[D]ifferences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004). Differences in seniority can also negate the determination that two employees are similarly situated. *Homes-Naples v. Girard Bd. of Educ.*, 212 F. Supp. 2d 743, 750 (N.D. Ohio 2001).

### Ms. Funk

Ms. Funk began her employment with OhioHealth on June 12, 1985. *Berkebile Affidavit*, at ¶ 6. Ms. Funk held the position of Senior Systems Analyst and her supervisor was Lawrence McNeil ("Mr. McNeil"). *Berkebile Affidavit*, at ¶ 7, *Thompson Depo*. at 49-53. Ms. Funk's job duties included generating the daily, weekly, and monthly reports that are reviewed and analyzed by the Senior Financial Analyst. *Berkebile Affidavit*, at ¶ 7. Plaintiff believed the Ms. Funk was

treated more favorably than she because Ms. Funk "has longevity with the company . . . she was very good at her job, very knowledgeable [and] I found her to be one of the few helpful people in our area." *Thompson Depo.* at 50-55.

Plaintiff and Ms. Funk are not similarly situated in all relevant aspects. Ms. Funk had more seniority than plaintiff. Ms. Funk had been employed by OhioHealth for approximately twenty one (21) years while plaintiff had been employed by OhioHealth for only approximately four months at the time of the termination of her employment. Also, the duties of Ms. Funk's position as a Senior Systems Analyst were different from those of plaintiff's position as a Senior Financial Analyst. *Thompson Depo.* at 50-52. Finally, Ms. Funk was supervised by Mr. McNeil while plaintiff was supervised by Ms. Berkebile.

### Mr. Hartfield

Mr. Hartfield began his employment with OhioHealth on July 21, 1981.[3] *Berkebile Affidavit*, at ¶ 6. Mr. Hartfield held the position of Senior Systems Analyst and his supervisor was Mr. McNeil. *Id.* at ¶ 7, *Thompson Depo.* at 55-57. Mr. Hartfield's job duties include generating the daily, weekly, and monthly reports that are reviewed and analyzed by the Senior Financial Analyst. *Berkebile Affidavit*, at ¶ 7.

Plaintiff and Mr. Hartfield are not similarly situated in all relevant aspects. Mr. Hartfield had more seniority than did plaintiff, having been employed by OhioHealth for approximately twenty five (25) years, as compared to plaintiff's approximate four months with OhioHealth. Also, Mr. Hartfield's position as a Senior Systems Analyst encompassed duties different than plaintiff's position as a Senior Financial Analyst. Finally, Mr. Hartfield was supervised by Mr.

---

[3]Mr. Hartfield left OhioHealth for a brief period in 2001. *Berkebile Affidavit* at ¶ 6.

McNeil while plaintiff's supervisor was Ms. Berkebile.

## Ms. Muller

Ms. Muller began her employment with OhioHealth on November 17, 1986, *Berkebile Affidavit*, at ¶ 6, and her supervisor was Ms. Berkebile. *Exhibit 10*, attached to *Motion for Summary Judgment*. Ms. Muller was a Project Specialist and an Administrative Assistant; her duties included pulling data and reports that were reviewed by the analysts in the Revenue Cycle department. *Berkebile Affidavit*. at ¶ 7. However, unlike a Senior Financial Analyst, Ms. Muller did not conduct analyses of the financial reports. *Id*.

Although they shared the same supervisor and worked in the same department, plaintiff was not similarly situated to Ms. Muller in all other relevant aspects. Ms. Muller had been employed at OhioHealth for more than twenty (20) years while plaintiff had been employed by OhioHealth for approximately four months before she was terminated. Additionally, plaintiff and Ms. Muller had different job duties and different job titles. Finally, unlike plaintiff, Ms. Muller was not required to analyze financial reports, although such analysis was an essential job duty of plaintiff's Senior Financial Analysis position. *Exhibit 2*.

## Ms. Danamehr

Ms. Danamehr was hired as a provisional employee by OhioHealth on September 12, 2005 in the Senior Financial Analyst position. *Berkebile Affidavit*, at ¶ 8. However, Ms. Danamehr had been hired provisionally to fill in the new position of Project Manager Revenue Cycle Operations. *Id*. In May 2006, the job description for this position was completed and Ms. Danamehr was placed in this new management position. *Id*. In the interim, Ms. Danamehr performed the duties of the Project Manager position which included coordinating all aspects of

budgeting, tracking, and tactical projects. *Id.* Ms. Danamehr also initially provided training to plaintiff and was tasked with assigning duties to plaintiff. *Thompson Depo*. at 207-08.

Plaintiff and Ms. Danamehr are not similarly situated employees in all relevant aspects. Although Ms. Danamehr had not been employed at OhioHealth for a significantly longer period than had plaintiff and, although plaintiff and Ms. Danamehr shared the same job title, they performed different job duties: plaintiff performed the job duties relating to the Senior Financial Analyst position while Ms. Danamehr performed the job duties relating to the Project Manager Revenue Cycle Operations. Finally, Ms. Danamehr had more experience than did plaintiff, as evidenced by Ms. Danamehr's providing training and assigning duties to plaintiff.

This Court concludes that plaintiff has failed to demonstrate that she was similarly situated to Ms. Funk, Mr. Hartfield, Ms. Muller, or Ms. Danamehr based on the differences in job duties, titles, seniority, experiences, and supervisors. Accordingly, plaintiff has failed to establish a *prima facie* case of race discrimination because she has not demonstrated that she was qualified for the position and that she was treated differently than similarly situated non-minority employees.

### b.      Legitimate Non-Discriminatory Reason

Assuming, *arguendo,* that plaintiff has established a *prima facie* case, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Anthony v. BTR Auto. Sealing Sys.,* 339 F.3d 506, 515 (6th Cir. 2003). The employer's burden is one of production, not persuasion. *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 599 (6th Cir. 2001) (citing *Burdine,* 450 U.S. at 253).

OhioHealth asserts that plaintiff was terminated -- not because of her race -- but because

she was unable to perform the job duties of the Senior Financial Analyst position and because plaintiff failed to accept another position within OhioHealth that was offered to her. *Motion for Summary Judgment* at 16-17 (citing *Thompson Depo.* at 277-78 and *Berkebile Affidavit*, at ¶ 9). This assertion constitutes a legitimate, non-discriminatory reason for plaintiff's termination. Defendant OhioHealth has therefore satisfied its burden at this stage of the action.

### c.      Pretext

Once a defendant employer articulates a legitimate, non-discriminatory reason for its adverse employment action, the plaintiff must then carry her overall burden of persuasion by showing that the proffered and allegedly nondiscriminatory reason was really pretextual. *Anthony*, 339 F.3d at 515.  "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

Plaintiff can show pretext in three ways. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000).  First, plaintiff can show that the articulated legitimate nondiscriminatory reason has no basis in fact.  *Id.*  Second, plaintiff can show that the reason given by the employer did not actually motivate the discharge.  *Id.*  Third, plaintiff can show that defendant's proffered reason was insufficient to motivate the discharge.  *Id.*

Plaintiff has not raised a genuine issue of material fact as to whether OhioHealth's reasons were false, insufficient, or not the real reasons for the adverse action.  Plaintiff instead offers only speculation and conclusory statements that OhioHealth discriminated against her. *Plaintiff's Response*, at 3-4.  Plaintiff also speculates that Ms. Rhodes discriminated against her because Ms. Rhodes acted surprised to see that plaintiff was an African American when Ms.

Rhodes initially met her:

> Q: So getting back to Nancy Rhodes, why do you think her motives were racially biased?
>
> *****
>
> A: And Ms. Rhodes was very surprised to see me and pretended not to know exactly what I would be doing, why I was hired.
>
> Q: Why do you think she pretended?
>
> A: I honestly believed she was shocked that I was a woman of color.
>
> Q: Did she say that?
>
> A: She didn't say it to me.
>
> Q: Did she say it to someone else?
>
> A: I'm not sure, so I can't answer that.

*Thompson Depo*. at 16-19.

Speculative and conclusory allegations are insufficient to withstand a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 (party opposing summary judgment must set forth specific facts showing a genuine issue for trial); *Bryant v. Kentucky*, 490 F.2d 1273 (6th Cir. 1974) (conclusory allegations, without more, are not enough to survive summary judgment).

Additionally, as discussed *supra*, plaintiff has conceded the essential facts of defendant's articulated reason for terminating plaintiff's employment when she testified that she was not suited to her position, *Thompson Depo., 272*, and when she testified that she did not accept an alternate position that had been held open for her at OhioHealth for approximately two weeks. *Thompson Depo*. at 277-78. Therefore, this Court concludes that plaintiff has failed to show that OhioHealth's articulated nondiscriminatory reason for plaintiff's termination was pretextual.

In light of the foregoing, this Court finds that plaintiff has failed to sustain her burden of proving her *prima facie* case and for showing that OhioHealth's articulated legitimate, nondiscriminatory reason was pretext. Therefore, as to plaintiff's claims under Title VII and

O.R.C. §4112.02, OhioHealth's *Motion for Summary Judgment* is **GRANTED**.

B. **Public Policy Claim**

Plaintiff was granted leave to amend her complaint to include a claim of wrongful termination in violation of the public policy prohibiting race discrimination under Ohio law. *Amendment to Complaint*, Doc. No. 36; *Opinion and Order*, Doc. No. 39. OhioHealth contends that this claim must fail because plaintiff has failed to establish an underlying violation of O.R.C. § 4112.02. *Motion for Summary Judgment*, at 20.

To state a claim of wrongful discharge in violation of public policy, "a plaintiff must allege facts demonstrating that the employer's act of discharging [her] contravened a 'clear public policy.'" *Painter v. Graley,* 70 Ohio St.3d 377, 383 (1994). In considering the sufficiency of an allegation of wrongful termination, courts applying Ohio law must consider whether: (1) clear public policy was manifested in a state or federal constitution, statute, or common law; (2) termination of employees under circumstances such as those alleged in a plaintiff's complaint would jeopardize that manifested public policy; (3) the termination of this plaintiff's employment was allegedly motivated by conduct related to that public policy; and (4) the employer lacked an overriding legitimate business justification for the termination of that employment. *Id; Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St. 3d 351, 355 (2007).

However, to prevail on a public policy claim based on race discrimination, a plaintiff must first establish a *prima facie* case of discrimination in violation of O.R.C. § 4112. *Kirkland v. St. Elizabeth Hosp.*, 120 F. Supp. 2d 660, 671 (N.D. Ohio 2000). In the instant case, plaintiff has failed to demonstrate a *prima facie* case of race discrimination in violation of O.R.C. § 4112. "Courts have summarily dismissed public policy claims when the plaintiff has failed to establish

a *prima facie* case for the underlying discrimination claim." *Id. See also Giles v. Norman Noble*, *Inc*., No. 02-3833, 88 Fed. Appx. 890, 896 (6th Cir. Feb. 24, 2004) (concluding that a violation of public policy claim could not proceed because the underlying race discrimination claim had failed)**.**

Because plaintiff has not established a *prima facie* case on the underlying race discrimination claims, this Court concludes that her public policy claim must necessarily fail. Therefore, as to plaintiff's public policy claim, OhioHealth's *Motion for Summary Judgment* is **GRANTED**.

**WHEREUPON**, *Defendant OhioHealth Corporation's Motion for Summary Judgment,* Doc. No. 43, is **GRANTED**.  The Clerk is **DIRECTED** to enter final judgment.


December 11, 2008                                    ___*s/Norah McCann King*_____
                                                     Norah McCann King
                                                     United States Magistrate Judge